## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ugowear, LLC

              Plaintiff,                      Case No. 25-cv-03845

v.                                      Hon. ___

DAN MARTINSON and             JURY TRIAL DEMANDED
GEAR TIE LLC d/b/a XTRUDEX

              Defendants.

## COMPLAINT

Plaintiff ugowear, LLC ("uGOwear") brings this Complaint against Defendants Dan Martinson, an individual, and Gear Tie LLC d/b/a Xtrudex  ("Xtrudex"). uGOwear alleges as follows.

### PARTIES

1.    Plaintiff uGOwear is a Minnesota limited liability company with a principal place of business at 14273 Natalie Rd NE, Prior Lake, MN 55372. uGOwear offers waterproof pouches for phones and other personal items.

2.    Defendant Dan Martinson is an individual who sells infringing waterproof cases under the trademark BOOE. Mr. Martinson is the owner of U.S. Trademark Registration No. 6,040,876 for BOOE. On information and belief and based on public filings in said trademark registration, Mr. Martinson has a mailing address at 18151 Territorial Road, Maple Grove MN 55369 or 21801 Industrial Blvd, Rogers, MN 55374.

3.      Defendant Gear Tie LLC is a Minnesota limited liability company with a principal executive office address at 5750 Main Street NE, Fridley, MN 55432. Xtrudex is an assumed name of Gear Tie LLC with a principal place of business at 4225 Wild Meadows Drv, Medina, MN 55340. On information and belief and based on Mr. Martinson's LinkedIn page[1] and that of Xtrudex[2], Xtrudex manufactures products including the infringing waterproof pouches for Mr. Martinson. On information and belief, Mr. Martinson is the principal of Xtrudex.

**JURISDICTION AND VENUE**

4.      This Court has original subject matter jurisdiction over the federal patent and trade dress infringement claims in this action under at least 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

5.      This Court has supplemental jurisdiction over the Minnesota statutory and common law claims in this action pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because the state law claims are so related to the federal law claims within the Court's jurisdiction that they form part of the same case or controversy.

6.      This Court has specific personal jurisdiction over Mr. Martinson at least because he uses property in Minnesota, transacts business in Minnesota, and has committed acts of infringement in Minnesota that have caused injury to uGOwear in Minnesota consistent with the principles underlying the U.S. Constitution and Minnesota Statute 543.19.

---

[1] https://www.linkedin.com/in/dan-martinson-125ab4a/
[2] https://www.linkedin.com/company/xtrudex/

7.      This Court has specific personal jurisdiction over Xtrudex because Xtrudex resides in Minnesota, and further at least because Xtrudex uses property in Minnesota, transacts business in Minnesota, and has committed acts of infringement in Minnesota that have caused injury to uGOwear in Minnesota consistent with the principles underlying the U.S. Constitution and Minnesota Statute 543.19.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Mr. Martinson and Xtrudex each have a regular and established place of business in this District, have committed acts of infringement in this district, and/or reside in Minnesota.

## FACTUAL BACKGROUND

9.      uGOwear was founded by water sport enthusiasts who needed a solution to keep their electronics dry while enjoying the water. One of uGOwear's products is a unique waterproof phone pouch, an example of which is pictured below:



10.     uGOwear started selling this phone pouch in 2015 and it has achieved popularity for its unique design and quality craftsmanship. uGOwear has achieved

substantial success with this product, selling hundreds of thousands of dollars worth of phone pouches.

11.     Since 2015, uGOwear has expended significant resources to promote its product. uGOwear has attended over a dozen trade shows per year and spent over $120,000 per year in advertising costs between trade show attendance, online marketing including Facebook, Instagram, and Google ads, print ads, and specialty sponsorships. For example, uGOwear sponsored pro fisherman Matt Stefan, as shown below[3]:



12.     uGOwear maintains a strong social media presence, with its posts and videos reaching thousands of viewers.

13.     Third parties recognize that uGOwear's unique phone pouch identifies uGOwear as the source of the product. For example, the online publication Sailing World published a review of the uGOwear phone pouch.[4]

---

[3] https://www.youtube.com/watch?v=t2AiIWUHLVY&t=5s
[4] https://www.sailingworld.com/gear/the-ugowear-phone-case/

14.     uGOwear's design is unique amongst other waterproof pouches. That is, other design options are available, yet uGOwear choose its particular distinctive ornamental design.

15.     uGOwear's unique phone pouch design is protected by trade dress and design patents.

***uGOwear's Design Patent***

16.     uGOwear is the owner of all rights, title, and interest in U.S. Design Patent No. 799,824 entitled CARRYING DEVICE ("the '824 Patent"). A true and correct copy of the '824 Patent is attached as **Exhibit A**. The '824 Patent issued on October 17, 2017. Figure 1 from the '824 Patent is pictured below:



17.     uGOwear owns all rights of recovery under the '824 Patent and has standing to sue for infringement of the '824 Patent.

18.     The '824 Patent is valid and enforceable.

*uGOwear's Common Law and Registered Trade Dress*

19.     uGOwear advertises, markets, promotes, and sells phone pouches with a distinctive design, pictured above, that consumers associate with uGOwear. Thus uGOwear's design constitutes trade dress.

20.     uGOwear has been using its trade dress in interstate commerce since 2015.

21.     uGOwear's trade dress features several eye-catching non-functional elements, such as the rounded corners, placement and extent of the zipper, and placement, size, and shape of the translucent window. These are aesthetic elements of uGOwear's trade dress that serve as a source-identifier.

22.     As described above, the uGOwear trade dress was developed at significant expense and as a result of marketing, advertising, and promotional efforts.

23.     uGOwear's continued and extensive use and promotion of its trade dress for a decade has built up substantial and valuable goodwill, as well as consumer brand loyalty and a positive reputation for uGOwear. As a result, uGOwear's trade dress is a valuable asset.

24.     Consumers recognize the uGOwear trade dress as identifying high-quality, effective products that originate from a single source—uGOwear.

25.     The uGOwear trade dress is inherently distinctive or has become distinctive through acquired secondary meaning.

26.     uGOwear is the owner of all rights, title, and interest in the registered trade dress Registration No. 7,708,534 ("the '534 Registration"), registered on the

Supplemental Register on February 25, 2025. A true and correct copy of the '534

Registration is attached as **Exhibit B**, and is pictured below:



*Booe's Infringement*

27.    In 2020, uGOwear learned that Mr. Martinson planned to launch a

waterproof phone pouch with a design that infringes its intellectual property. On

February 21, 2020, uGOwear contacted Mr. Martinson to notify him of the '824 Patent

and other intellectual property. At the time, the '534 Registration had not yet registered.

28.    On information and belief, even before receiving said letter from uGOwear,

Mr. Martinson knew of uGOwear. By 2020, uGOwear had already spent over five years

advertising and marketing its products on social media, through internet advertising, and

at trade shows, as discussed above. Moreover, Mr. Martinson has been in the business of

manufacturing extruded and molded thermoplastic consumer products, like uGOwear's

products, since at least 2011.[5]

---

[5] https://www.linkedin.com/in/dan-martinson-125ab4a/

29.     uGOwear contacted Mr. Martinson and Xtrudex again by letter delivered on August 20, 2025, informing Mr. Martinson and Xtrudex of their infringement of the '824 Patent and the '534 Registration. No response was received.

30.     Today, Mr. Martinson and/or Xtrudex (together, "Booe") continue to manufacture, sell, and/or import pouches called "Waterproof Belt Bag" that resemble uGOwear's pouches and infringe uGOwear's intellectual property. An example is pictured below:[6]



## COUNT I
## PATENT INFRINGEMENT by MARTINSON

31.     uGOwear incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

32.     Mr. Martinson has been and is now infringing, literally and/or under the doctrine of equivalents, the '824 Patent in this District and elsewhere by making, using,

---

[6] https://booe.com/products/waterproof-belt-bag?variant=43731539099846

offering for sale, importing, and/or selling infringing Waterproof Belt Bags, without license or authorization from uGOwear.

33.    As shown above, Mr. Martinson's Waterproof Belt Bags have a substantially similar design to that of the '824 Patent.

34.    These acts constitute infringement under at least 35 U.S.C. § 271(a).

35.    uGOwear has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284 adequate to compensate it for Mr. Martinson's infringement.

36.    As a direct and proximate consequence of the infringement, uGOwear has been and is being harmed, and, unless Mr. Martinson's infringing acts and practices are enjoined by the Court, will continue to be injured in its property rights.

37.    Based on the acts and circumstances described above, Mr. Martinson's infringement of the '824 Patent is an has been willful. Mr. Martinson has known of uGOwear and its unique aesthetic product design since at least 2020, before launching his Waterproof Belt Bag, yet proceeded to launch the infringing Waterproof Belt Bag despite this knowledge. Therefore, Mr. Martinson's infringing activities constitute willful infringement of the '824 Patent.

38.    On information and belief, Mr. Martinson's infringement will continue unabated unless and until enjoined by this Court.

39.    uGOwear is entitled to injunctive relief from this Court under 35 U.S.C. § 283.

## COUNT II
## PATENT INFRINGEMENT by XTRUDEX

40.    uGOwear incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

41.    Xtrudex has been and is now infringing, literally and/or under the doctrine of equivalents, the '824 Patent in this District and elsewhere at least by manufacturing infringing Waterproof Belt Bags, without license or authorization from uGOwear.

42.    As shown above, Xtrudex's Waterproof Belt Bags have a substantially similar design to that of the '824 Patent.

43.    These acts constitute infringement under at least 35 U.S.C. § 271(a).

44.    uGOwear has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284 adequate to compensate it for Xtrudex's infringement.

45.    As a direct and proximate consequence of the infringement, uGOwear has been and is being harmed, and, unless Xtrudex's infringing acts and practices are enjoined by the Court, will continue to be injured in its property rights.

46.    Based on the acts and circumstances described above, Xtrudex's infringement of the '824 Patent is an has been willful. On information and belief, Xtrudex's has known of uGOwear and its unique aesthetic product design since at least 2020, at least via the knowledge of its principal Mr. Martinson, before the Waterproof Belt Bag was launched, yet proceeded to manufacture the infringing Waterproof Belt Bag

despite this knowledge. Therefore, Xtrudex's infringing activities constitute willful infringement of the '824 Patent.

47.     On information and belief, Xtrudex's infringement will continue unabated unless and until enjoined by this Court.

48.     uGOwear is entitled to injunctive relief from this Court under 35 U.S.C. § 283.

**COUNT III**
**TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(A)**
**by MARTINSON**

49.     uGOwear incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

50.     Mr. Martinson's Waterproof Belt Bags are not sponsored by, endorsed by, or affiliated with uGOwear.

51.     uGOwear's trade dress described above under the common law and as set forth in the '534 Registration is entitled to trade dress protection as a source identifier.

52.     uGOwear's trade dress is inherently distinctive or at least has acquired distinctiveness through secondary meaning.

53.     Mr. Martinson uses uGOwear's trade dress for his Waterproof Belt Bags in a manner that constitutes actionable trade dress use as a source identifier.

54.     Mr. Martinson's use of uGOwear's trade dress for his Waterproof Belt Bags is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Mr. Martinson and/or his brand BOOE, on the one hand, and uGOwear,

on the other hand, or as to the origin, sponsorship, or approval of Mr. Martinson's products, services, or commercial activities by uGOwear.

55.     On information and belief, Mr. Martinson's use of uGOwear's trade dress in commerce has caused confusion, mistake, and/or deception and continues to cause confusion, mistake, and/or deception amongst a substantial portion of consumers, the intended audience, and the actual audience.

56.     Mr. Martinson's infringing activities will continue unless restrained and enjoined.

57.     Mr. Martinson's infringing activities have directly and proximately caused and continue to cause irreparable and economic injury to uGOwear, including, without limitation: loss of and/or harm to goodwill, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

58.     Mr. Martinson's infringement of uGOwear's trade dress has enabled Mr. Martinson to benefit unfairly from the reputation and success of uGOwear and its trade dress, thereby allowing Mr. Martinson to unjustly profit, and giving Mr. Martinson's products commercial value they would not otherwise have.

59.     Based on the acts and circumstances described above, Mr. Martinson adopted the uGOwear trade dress or confusingly similar trade dress with the willful intent to deceive a substantial portion of consumers, the intended audience, and the actual audience. Mr. Martinson has known of uGOwear and its unique aesthetic product design since 2020, before launching his Waterproof Belt Bag, yet proceeded to launch the

infringing Waterproof Belt Bag despite this knowledge.   Therefore, Mr. Martinson's infringing activities constitute willful infringement of the uGOwear trade dress.

60.    uGOwear is entitled to all compensatory damages, including, but not limited to: pecuniary damages, loss of and/or harm to goodwill, lost profits, expectation and consequential damages, exemplary damages, enhanced and/or trebled damages, and disgorgement of Mr. Martinson's profits.

61.    Monetary damages and other remedies at law are insufficient to fully compensate uGOwear for its injuries, and uGOwear is entitled to equitable relief, including preliminary and permanent injunctive relief.

62.    uGOwear is otherwise entitled to the remedies provided for in U.S.C. §§ 1116-1118.

**COUNT IV**
**FALSE AND MISLEADING DESIGNATIONS AND DESCRIPTIONS OF ORIGIN, AFFILIATION, CONNECTION, ASSOCIATION, SPONSORSHIP AND/OR APPROVAL IN VIOLATION OF 15 U.S.C. § 1125(A) by MARTINSON**

63.    uGOwear incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

64.    Mr. Martinson's products and services are not produced by, sponsored by, endorsed by, or affiliated with uGOwear.

65.    Mr. Martinson's activities alleged above relating to his willful use of the uGOwear trade dress or confusingly similar trade dress each constitute use in commerce of trad dress, or false designation of origin, false or misleading description of fact, or false

or misleading representation of fact that is likely to cause, has caused, and continues to cause confusion, mistake, and/or deception as to the affiliation, connection, or association of Mr. Martinson and/or his brand BOOE with uGOwear, and/or as to the origin, sponsorship, or approval of Mr. Martinson's product, services, or commercial activities by uGOwear, in violation of 15 U.S.C. § 1125(a).

66.    Based on the acts and circumstances described above, Mr. Martinson adopted the uGOwear trade dress or confusingly similar trade dress with the willful intent to deceive a substantial portion of consumers, the intended audience, and the actual audience. Mr. Martinson has known of uGOwear and its unique aesthetic product design since 2020, before launching his Waterproof Belt Bag, yet proceeded to launch the infringing Waterproof Belt Bag despite this knowledge.   Therefore, Mr. Martinson's infringing activities constitute willful violations of at least 15 U.S.C. § 1125(a).

67.    Mr. Martinson's false, misleading, confusing, and deceptive activities will continue unless restrained and enjoined.

68.    Mr. Martinson's false, misleading, confusing, and deceptive activities have directly and proximately caused and continue to cause irreparable and economic injury to uGOwear, including loss of goodwill, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

69.    Mr. Martinson's false, misleading, confusing, and deceptive activities have enabled Mr. Martinson to benefit unfairly from the reputation and success of uGOwear and the uGOwear trade dress, thereby allowing Mr. Martinson to unjustly profit, and

giving Mr. Martinson's products and services commercial value that they would not otherwise have.

70.     uGOwear is entitled to all compensatory damages, including, but not limited to: pecuniary damages, loss of and/or harm to goodwill, lost profits, expectation and consequential damages, exemplary damages, enhanced and/or trebled damages, and disgorgement of Mr. Martinson's profits.

71.     Monetary damages and other remedies at law are insufficient to fully compensate uGOwear for its injuries, and uGOwear is entitled to equitable relief, including preliminary and permanent injunctive relief.

72.     uGOwear is otherwise entitled to the remedies provided for in 15 U.S.C. §§ 1116-1118.

## COUNT V
## INDIRECT TRADE DRESS INFRINGEMENT
## by XTRUDEX

73.     uGOwear incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

74.     Xtrudex has induced Mr. Martinson to use, contributed to Mr. Martinson's use of, and/or directed Mr. Martinson to use the uGOwear trade dress or confusingly similar trade dress in connection with goods in commerce that are likely to cause, have caused, and continue to cause confusion, mistake, and/or deception as to the affiliation, connection association, source, sponsorship, and approval of uGOwear's goods and commercial activity.

75.     As discussed above, Xtrudex's willfully intended actions sufficiently and necessarily caused and are continuing to cause Mr. Martinson to directly infringe uGOwear's trade dress, as discussed above.

76.     On information and belief, use of uGOwear's trade dress in commerce by Mr. Martinson as induced by, contributed to, and/or directed by Xtrudex, has caused confusion, mistake, and deception and continues to cause confusion, mistake, or deception amongst a substantial portion of consumers, the intended audience, and the actual audience.

77.     Xtrudex's indirect trade dress infringement is likely to continue unless restrained and enjoined.

78.     Xtrudex's infringing activities have directly and proximately caused and continue to cause irreparable and economic injury to uGOwear, including, without limitation: loss of and/or harm to goodwill, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

79.     Xtrudex's indirect infringement of uGOwear's trade dress has enabled Xtrudex to benefit unfairly from the reputation and success of uGOwear and its trade dress, thereby allowing Xtrudex to unjustly profit.

80.     uGOwear is entitled to all compensatory damages, including, but not limited to: pecuniary damages, loss of and/or harm to goodwill, lost profits, expectation and consequential damages, exemplary damages, enhanced and/or trebled damages, and disgorgement of Xtrudex's profits.

81. Monetary damages and other remedies at law are insufficient to fully compensate uGOwear for its injuries, and uGOwear is entitled to equitable relief, including preliminary and permanent injunctive relief.

82. uGOwear is otherwise entitled to the remedies provided for in 15 U.S.C. §§ 1116-1118.

## COUNT VI
## COMMON LAW TRADE DRESS INFRINGEMENT
### By MARTINSON

83. uGOwear incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

84. As alleged above, uGOwear has continuously used the uGOwear trade dress in commerce since 2015.

85. As alleged above, uGOwear's trade dress features several eye-catching non-functional elements, such as the rounded corners, placement and extent of the zipper, and placement, size, and shape of the translucent window. These are aesthetic elements of uGOwear's trade dress that serve as a source-identifier.

86. As alleged above, the uGOwear trade dress was developed at significant expense and as a result of marketing, advertising, and promotional efforts.

87. As alleged above, uGOwear's continued and extensive use and promotion of its trade dress for a decade has built up substantial and valuable goodwill, as well as consumer brand loyalty and a positive reputation for uGOwear. As a result, uGOwear's trade dress is a valuable asset.

88.     As alleged above, consumers recognize the uGOwear trade dress as identifying high-quality, effective products that originate from a single source— uGOwear.

89.     As alleged above, the uGOwear trade dress is inherently distinctive or has become distinctive through acquired secondary meaning.

90.     Mr. Martinson has used the uGOwear trade dress or confusingly similar trade dress in commerce and in a manner that constitutes actionable trade dress use as a source identifier.

91.     Mr. Martinson's use of the uGOwear trade dress or confusingly similar trade dress is likely to cause confusion, mistake, and deception concerning the source, sponsorship, and/or approval of Mr. Martinson's products or those of his brand BOOE.

92.     Based on the acts and circumstances described above, Mr. Martinson adopted the uGOwear trade dress or confusingly similar trade dress with the willful intent to deceive a substantial portion of consumers, the intended audience, and the actual audience. Mr. Martinson has known of uGOwear and its unique aesthetic product design since 2020, before launching his Waterproof Belt Bag, yet proceeded to launch the infringing Waterproof Belt Bag despite this knowledge.   Therefore, Mr. Martinson's infringing activities constitute willful infringement of the uGOwear trade dress.

93.     On information and belief, Mr. Martinson's use of the uGOwear trade dress or confusingly similar trade dress in commerce has deceived and continues to deceive a substantial portion of consumers, the intended audience, and the actual audience.

94.     Mr. Martinson's infringing activities constitute common law trademark infringement.

95.     Mr. Martinson's infringing activities will continue unless restrained and enjoined.

96.     Mr. Martinson's infringing activities have directly and proximately caused and continue to cause irreparable and economic injury to uGOwear, including, without limitation: loss of and/or harm to goodwill, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

97.     Mr. Martinson's infringement of the uGOwear trade dress has enabled Mr. Martinson to benefit unfairly from the reputation and success of uGOwear and its trade dress, thereby allowing Mr. Martinson to unjustly profit, and giving Mr. Martinson's products commercial value they would not otherwise have.

98.     uGOwear is entitled to all compensatory damages, including, but not limited to: pecuniary damages, loss of and/or harm to goodwill, lost profits, expectation and consequential damages, exemplary damages, enhanced and/or trebled damages, and disgorgement of Mr. Martinson's profits.

99.     Monetary damages and other remedies at law are insufficient to fully compensate uGOwear for its injuries, and uGOwear is entitled to equitable relief, including preliminary and permanent injunctive relief.

## COUNT VII
## DECEPTIVE TRADE PRACTICE IN VIOLATION OF MINNESOTA STATUTE
## § 325D.44
## by MARTINSON

100.    uGOwear incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

101.    Through his willful, intentional conduct, Mr. Martinson has engaged in deceptive trade practices, including those described above, in the in the course of business, that cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, and/or certification of Mr. Martinson's products and services, or that of his brand BOOE, and/or cause a likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, uGOwear.

102.    Mr. Martinson's conduct constitutes a violation of at least Minnesota Statute § 325D.44, Subdivision 1.

103.    Mr. Martinson's deceptive acts will continue unless restrained and enjoined.

104.    uGOwear is entitled to compensatory damages, including, but not limited to: pecuniary damages, loss of and/or harm to goodwill, lost profits, expectation and consequential damages, exemplary damages, enhanced and/or trebled damages, and disgorgement of Mr. Martinson's profits.

105.    Mr. Martinson's deceptive acts have directly and proximately caused and continue to cause irreparable injury and economic injury to uGOwear, including loss of

and/or harm to goodwill, reputational harm, loss of business, loss of sales, loss of revenues, and loss of profits.

106.   Monetary damages and other remedies at law are insufficient to fully compensate uGOwear for its injuries, and uGOwear is entitled to equitable relief, including preliminary and permanent injunctive relief.

**PRAYER FOR RELIEF**

uGOwear asks this Court to enter judgment against Mr. Martinson and Xtrudex and its officers, agents, servants, employees, and all persons in active concert or participation with them, granting the following relief:

A.  An adjudication that Mr. Martinson and Xtrudex have infringed the '824 Patent;

B.  An adjudication that Mr. Martinson's and Xtrudex's infringement of the '824 Patent is willful;

C.  An adjudication that Mr. Martinson has infringed the uGOwear trade dress;

D.  An adjudication that Mr. Martinson's infringement of the uGOwear trade dress is willful;

E.  An adjudication that Mr. Martinson used the uGOwear trade dress in a false or misleading manner as a designations or descriptions of origin, affiliation, connection, association, sponsorship and/or approval;

F.  An adjudication that Mr. Martinson's use of the uGOwear trade dress in a false or misleading manner was willful;

G.  An adjudication that Xtrudex indirectly infringed the uGOwear trade dress;

H.  An adjudication that Xtrudex's indirect infringement of the uGOwear trade dress was willful;

I.  An adjudication that Mr. Martinson violated Minnesota Statute 325D.44, Subdivision 1;

J.   The ascertainment of and award to uGOwear of damages from the infringement of the '824 Patent together with prejudgment and post-judgment interest and any other costs and expenses permitted by law, under 35 U.S.C. § 284;

K.   The ascertainment of and award to uGOwear of damages from the infringement of the uGOwear trade dress, including but not limited to, disgorgement of Mr. Martinson and Xtrudex's profits, together with prejudgment and post-judgment interest and any other costs and expenses permitted by law, under 15 U.S.C. § 1117 and/or Minnesota common law;

L.   The award of enhanced damages according to the circumstances of Mr. Martinson and Xtrudex's infringement of the uGOwear trade dress and/or treble damages for the use of an infringing mark under Minnesota common law;

M.   A finding that this case is exceptional and the award of reasonable attorneys' fees, costs, and expenses in this action to uGOwear under 15 U.S.C. § 1117 and 35 U.S.C. § 285;

N.   An injunction and/or order for specific performance permanently enjoining Mr. Martinson and Xtrudex from any further acts of infringement of uGOwear patent and trade dress rights, including:

    a.   Offering for sale, selling, making, using, and/or importing into the United States any products not authorized by uGOwear that infringe the '824;

    b.   Using the uGOwear trade dress or confusingly similar trade dress in connection with waterproof pouches;

    c.   Aiding, abetting, inducing, contributing to, or otherwise assisting anyone in infringing the '824 Patent or the uGOwear trade dress; and

    d.   Any action designed to circumvent this injunction for the purpose of continuing infringing activity;

O.   An accounting of Mr. Martinson and Xtrudex's profits resulting from the breaches and infringement complained of in this Complaint; and

P.   Awarding to uGOwear such other and further relief as this Court may deem just and proper.

## JURY DEMAND

uGOwear hereby demands a trial by jury on all issues so triable.

Dated: October 3, 2025                    Respectfully submitted,

**GREENE ESPEL PLLP**

s/ Emily M. McAdam
Sybil L. Dunlop, Reg. No. 0390186
Emily M. McAdam, Reg. No. 0400898
222 S 9th Street, #2200
Minneapolis, MN 55402
sdunlop@greeneespel.com
emcadam@greeneespel.com
(612) 373-0830